**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

LYNDSEY SMITH, *et al.*    *

          *

    Plaintiffs,    *

          *

   v.       *   Civil Action No. AW-05-3258

          *

MONTGOMERY COUNTY,  *

MARYLAND, *et al.*    *

          *

    Defendants.   *

**************************************************************************

**<u>MEMORANDUM OPINION</u>**

   This action involves claims under 42 U.S.C. § 1983 ("Section 1983") and other state law claims by Lyndsey Smith, Eric Smith, and Elissa Hillman (collectively, "Plaintiffs") against J. Thomas Manger, Cara Thomas ("Thomas"), and Montgomery County, Maryland (the "County") (collectively, "Defendants"). Currently pending before the Court is Defendants' Motion for Summary Judgment [13]. The Court has reviewed the entire record, as well as the Pleadings and Exhibits with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

   The Court gleans the relevant facts from Plaintiffs' Opposition to Defendants' Motion. In December 2002, Elissa Hillman shared her home with her husband, her son Eric Smith, her daughter Lyndsey Smith, Lyndsey's boyfriend, Lee Gladney, and Lyndsey and Lee's son, Jaymar. Lyndsey and Lee had a family pet, an American Staffordshire Terrier known as Aisha. On December 31, 2003, Aisha escaped from her yard and got into a fight with another dog in the neighborhood. The

1

other dog later died from his injuries.  On January 2, 2003, Thomas, an unsworn officer of the Animal Services Division, Montgomery County Police Department, hand-delivered to Lyndsey an Order requiring that Aisha wear a muzzle when outside her house.  On January 7, 2003, the Animal Services Division received a call alleging that Lee Gladney was observed walking Aisha without a muzzle.  That same day, Thomas hand-delivered a Municipal Infraction Citation to Lee Gladney, alleging that Gladney failed to follow a lawful order requiring Aisha to be muzzled when outdoors.

On January 10, 2003, Thomas presented an Application for Search and Seizure Warrant to Judge Michael Pincus, Circuit Court for Montgomery County, Maryland, for the purpose of seizing Aisha.  Judge Pincus failed to sign or date the Search and Seizure Warrant.[1]  On January 10, 2003, Lyndsey Smith was home alone with her minor son Jaymar when she looked out a window and saw a marked Animal Services Division van drive into the driveway.  At the same time she observed approximately five (5) marked police cars drive up and stop along the street in front of her home. In fear that the officers might charge into the house and start shooting, Lyndsey Smith locked herself and her minor son Jaymar, in a bathroom.  She called her mother, Elissa Hillman, who was at work in Virginia.  Elissa Hillman advised Lyndsey to call her brother, Eric, who was closer to home at the time.  Lyndsey never heard a knock on the door nor did any of the dogs in the house bark as they normally would when anyone came to the house.

Eric Smith was only five minutes away from home when he received the frantic phone call from his sister, Lyndsey.  Eric immediately drove home, entered the house through the front door, and ran upstairs to secure the dogs in the house.  When he entered the house, he observed Thomas

_____

[1] It appears that Judge Pincus did sign the Application for Search and Seizure Warrant and Oath, but failed to sign and date the actual Warrant.  *See* Aff. of Judge S. Michael Pincus.

and several Montgomery County police officers in the kitchen, and he heard them calling out to him. Eric Smith asked if the officers had a Warrant, and then asked to see it. He was given a copy of the Application for the Warrant, which was unsigned by a judge.[2] Lyndsey came into the living room area. Thomas ordered her to get Aisha so that they could impound her, and Lyndsey complied with that order.

On December 7, 2005, Plaintiffs Lyndsey Smith, individually and on behalf of her son Jaymar Gladney, Eric Smith and Elissa Hillman filed the instant suit claiming that they were subjected to an unreasonable search and seizure because their home was entered and the dog was taken pursuant to a warrant that was not signed by the issuing judge. Plaintiffs' Complaint contains six counts alleging false imprisonment, trespass to land, trespass to chattels, and violation of Plaintiffs' state and federal constitutional rights.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). However, the party who bears the burden of persuasion on a particular claim must present legally sufficient

---

[2] Although Plaintiffs state that the Application for the Warrant was not signed, both parties have submitted copies of the Application, which is signed by Judge Pincus. Plaintiffs evidently intended to state that the warrant itself was not signed.

evidence to support each element of his claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

### A.  Section 1983 Claims

In Counts IV and V of their Complaint, Plaintiffs claim Defendants, acting under color of state law, violated Plaintiffs' rights to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiffs essentially argue that their constitutional rights were violated when officers of the County entered their home and seized their dog, "[w]ith an unsigned, and therefore, facially defective search warrant."  Compl. ¶ 12.  It is undisputed that the search warrant relied upon by Defendants was not signed.  However, Defendants contend that, although the search warrant was unsigned, the officers had probable cause to enter the home and seize the dog based upon the violation of the Notice of Complaint and Order to Correct requiring the dog to be muzzled when off of Plaintiffs' property.  The judge's failure to sign the actual warrant, Defendants argue, does not invalidate the probable cause for the entry of Plaintiffs' home and seizure of the dog.

Defendants rely primarily on established Fourth Amendment principles regarding search and seizures.  The search at issue here was an administrative search.  Generally, administrative searches require warrants.  *See Michigan v. Clifford*, 464 U.S. 287, 291 (1984).  The warrant must demonstrate probable cause before a search of a private residence may take place.  *Camara v. Municipal Court*, 387 U.S. 523, 534 (1967).  The probable cause standard applied in administrative search cases is different, however, than that applied in criminal cases.  *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978).  The standard to be applied is reasonableness.  *Camara*, 387 U.S. at 539.  When the application for warrant contains evidence of an existing violation, then there is sufficient probable cause to issue an administrative search warrant.  *Marshall*, 436 U.S. at 320.

Here, Plaintiffs do not claim that probable cause for the search of the home and seizure of the dog was lacking.  They only claim that the warrant was facially defective, and thus, unable to sustain a valid search and seizure.  Defendants claim, however, that given the circumstances, it was reasonable for Thomas to rely on the warrant.  Thomas presented the warrant application, oath, and warrant to a neutral judge.  The judge reviewed the papers, administered the oath, and signed the papers in two of the three places that required the judge's signature.  Although it made the warrant facially defective, the judge's failure to sign the warrant did not amount to a constitutional violation.  *See United States v. Lipford*, 203 F.3d 259, 270 (4th Cir. 2000) (holding that the lack of signature on a warrant "was, at most, a technical violation of the [criminal procedure rules], and not a violation of the Fourth Amendment").  In fact, Defendants have submitted the affidavit of Judge Pincus in which the judge acknowledged that his failure to sign the actual warrant was apparently an oversight given the fact that he signed the application and the oath.  Further, the judge averred that the application for warrant and oath presented sufficient probable cause to grant the warrant.

5

*See* Aff. of Judge S. Michael Pincus.

The Court agrees with Defendants.  It was reasonable for Thomas to believe that she had a valid search warrant.  One court has explained that

> [m]inisterial errors do not nullify search warrants.  A failure to sign an otherwise valid warrant, in a situation where there is no question that the judge intends to issue the warrant, should be deemed a ministerial defect which does not invalidate the warrant. Where there is no dispute that the judge intended to issue the warrant, and the judge signed the officer's affidavit, the failure to sign the warrant is no more than a clerical error.

*Commonwealth v. Pellegrini*, 405 Mass. 86, 88-89 (Mass. 1989).  There are no material facts in dispute with respect to Plaintiffs' Section 1983 claims.  In their pleadings, Plaintiffs argue that there are disputes regarding: (1) whether Thomas was alone or with other officers when she presented the warrant application to Judge Pincus; (2) whether Lyndsey Smith or Eric Smith was given a copy of the warrant; (3) whether the warrant was returned; and (4) whether the officers forced entry into the home.  While these facts may indeed be in dispute, they are certainly not material to the issue of whether Thomas acted reasonably in executing the unsigned search warrant.  As such, Defendants are entitled to judgment as a matter of law with respect to the Section 1983 claims.

B.  Claims under Maryland Declaration of Rights

In Count VI of their Complaint, Plaintiffs claim that the entry of their home and seizure of the dog pursuant to an unsigned warrant violated their rights under Articles 24 and 26 of the Maryland Declaration of Rights.  Although these are in fact state law claims, Articles 24 and 26 of the Maryland Constitution are *in pari materia* with the Fourteenth Amendment and Fourth Amendment of the United States Constitution, respectively. *See Murphy v. Edmonds*, 601 A.2d 102, 107 (Md. 1992) (explaining that "the Due Process Clause of the Maryland Constitution, contained in Article 24 of the Declaration of Rights, embodies the concept of equal protection of the laws to

6

the same extent as the Equal Protection Clause of the Fourteenth Amendment"); *Gahan v. State*, 430 A.2d 49, 54 (Md. 1981) (explaining that "Art[icle] 26 is *in pari materia* with the Fourth Amendment").  Because Plaintiffs have not established a constitutional violation under Section 1983, they likewise have failed to establish a violation of the Maryland Declaration of rights. Therefore, Defendants are entitled to summary judgment on Count VI of the Complaint.

## C.  False Arrest Claim

In Count I of Plaintiffs' Complaint, they allege that Thomas intentionally and unlawfully restrained and detained Plaintiffs Lyndsey Smith, Jaymar Gladney, and Eric Smith during the execution of the search warrant.  Although styled as a "false arrest" claim, the Court will interpret Count I to be a false imprisonment claim under state law.  "Under Maryland law, in order to establish the tort of false imprisonment, the accusing party must prove that a deprivation of liberty occurred without consent and legal justification."  *Herrington v. Red Run Corp.*, 811 A.2d 894, 896 (Md. Ct. Spec. App. 2002).  Plaintiffs claim that disputed issues of fact exist as to whether Thomas was legally justified in executing the facially defective warrant.  While the issue of justification may be disputed by the parties, it is not an issue of fact, but one of law, and this Court believes Defendants had legal justification for executing the search warrant.  Probable cause has been established and Plaintiffs have not produced any evidence to suggest the absence of probable cause. Having failed  to establish the "without legal justification" element of the claim, Plaintiffs false imprisonment claim cannot survive summary judgment.

However, even assuming no legal justification existed, Plaintiffs have failed to meet their burden of proving that they were actually deprived of their liberty.  Both Lyndsey and Eric Smith were free to move about the house during the execution of the warrant.  Thomas and the other

officers did no more than what was necessary to seize the dog.  As such, Plaintiffs cannot prevail on their false imprisonment claim.

D.  Trespass to Land and Chattels Claims

Counts II and III of Plaintiffs' Complaint alleges trespass to land and trespass to chattels, respectively.  Because the Court believes Defendants were legally justified in searching the home and seizing the dog, there are no genuine issues of material fact in dispute regarding these claims. Defendants are entitled to judgment as a matter of law.

**<u>CONCLUSION</u>**

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment [13].  An Order consistent with this Memorandum Opinion will follow.

December 14, 2006                                                        /s/
Date                                                            Alexander Williams, Jr.
                                                                United States District Judge